JOHN Z. LULL v. ANAMOSA NATIONAL BANK and C. S. MIL-LARD, Appellant.

**Agency:** ESTOPPEL TO DENY AUTHORITY. One who receives the beneficial results of a contract made in his behalf by another cannot deny the authority of the person making it.

**Undisclosed Principal:** LIABILITY OF AGENT. An agent who acts for an undisclosed principal is individually liable on his promise, though he aferwards disclose the principal's name.

SAME. Where an agent acts in behalf of himself and an undisclosed principal, both are liable on the contract.

**Contracts:** CONSIDERATION: *Illegality.* · An agreement by a national bank to pay taxes on its stock transferred to it, and assessed at the time against the sellers, in consideration of being allowed to· retain unpaid dividends and surplus, is not illegal, although the taxes are not properly assessed.

UNDERSTANDING. Code, section 4617, providing that "when the terms. of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it," applies to· express contracts.

**Joint and Several Judgments:** ACTIONS EX CONTRACTU AND EX DELICTO. The rule that if plaintiff maintains his action against one of the several defendants he may have judgment against that one, and the other defendants may have judgment against plaintiff for costs, is alike applicable to actions *ex contractu* and *ex· delicto.*

| 110 | 537 |
| 127 | 455 |
| 110 | 537 |
| 129 | 284 |
| 110 | 537 |
| 134 | 277 |
| 110 | 537 |
| f135 | 23 |
| 110 | 537 |
| 140 | 711 |
| 141 | 553 |
| 110 | 537 |
| 144 | 599 |

**Harmless Error:** INSTRUCTION TOO FAVORABLE. A defendant cannot complain of an instruction which casts on the plaintiff more of a burden than he should be required to assume.

**Misjoinder:** WAIVER OF OBJECTION: *Motions.* Unless a misjoinder of parties is taken advantage of by motion the objection is waived.

*Appeal from Jones District Court.*—HON. W. G. THOMPSON, Judge.

TUESDAY, FEBRUARY 6, 1900.

ACTION at law to recover the amount of taxes assessed against certain shares of stock held by plaintiff and his assignors in defendant bank under and by virtue of a contract between plaintiff and defendants for the sale thereof. There was a trial to a jury, resulting in a verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*M. W. Herrick, Ellison, Ercanbrack & Lawrence,* and *Smith & Smith* for appellants.

*Jamison & Smyth, W. D. Sheean,* and *B. H. Miller* for appellee.

DEEMER, J.—At the time the matters occurred out of which this controversy arose there were two banks in the town of Anamosa,—one of them—private, owned by L. Schoonover; and the other a national bank, owned by plaintiff, defendant Millard, and others. The national bank had not been making money, and some of its stockholders became dissatisfied with the amount of dividends declared. The Schoonover bank was making money for its owner, but he was advanced in years, and desired to retire from business. Defendant Millard, who was cashier, as well as a stockholder, of the national bank, conceived the idea that it would be a good financial stroke to buy the Schoonover bank, and mentioned the same to plaintiff, who is his father-in-law, and to others interested in the bank. Plaintiff did not look

with favor on the proposition, thinking that it involved too much responsibility. Certain friends of Millard, living in Dubuque, were interested in the matter, and concluded, as we understand it, to join with Millard in effectuating the purchase. At the January, 1897, meeting of the board of directors of the national bank, after transacting the usual business, they transferred two hundred and fifty dollars to the surplus fund, and struck a dividend of five hundred dollars, leaving less than. one hundred dollars of earnings unappropriated. The question of buying the Schoonover bank then came up, and plaintiff and some of the other stockholders said they would not agree to do it, but would sell their stock, amounting to twenty-four thousand dollars. Their proposition to sell was accepted by Millard. Plaintiff and the other stockholders first agreed to accept in payment of their stock notes and securities held by the Schoonover bank, and something like two hundred thousand dollars in securities belonging to that bank were submitted to them for acceptance. When making the selection, a dispute arose between Millard and the plaintiff regarding the interest account on the securities, one claiming that the notes should be taken at their face value, and the other that accrued interest should be added. Plaintiff finally agreed to take the notes with interest added, but was unable to find enough of the Schoonover securities that were satisfactory. Millard then proposed that plaintiff and others, who were selling their stock, should select enough of the securities of the national bank to make up the balance of the purchase price, which was accordingly done. A contention arose regarding the value of the stock held by plaintiff and others who were proposing to sell, and also as to the undivided profits, but it was finally agreed that the stock should be taken at its par value. And on the one hand it is insisted that, in consideration of plaintiff's relinquishment of his claim to the accrued interest on the securities and undivided profits and surplus, defendants agreed to pay the

taxes assessed against the stock transferred to them; while
on the other it is contended that Millard refused to
pay more than par for the stock, and refused to pay, the
taxes, because the small amount of surplus then in the bank
was likely to be swallowed up in losses that the bank might
sustain from securities that were then counted as good.   It
appears that prior to the year 1897 the taxes on the stock
of the national bank had been assessed to and paid by the
bank.   Not long after the plaintiff and those with whom
he acted had transferred their stock, the bank paid the first
installment of taxes assessed against the stock for the year
1896, but, subsequently learning that this was not the proper
manner of assessing the tax, the bank made application to
the county treasurer for a refund of the taxes so paid, which
was granted, and the county officials then proceeded to assess
the individual shareholders of the bank on the amount
of stock held by them on January 1, 1896, as shown by the
stock book.   Plaintiff and those whom he represents were
compelled to and did pay the taxes so assessed against the
shares of stock that they had transferred to the defendants,
amounting to the sum of four hundred and eighty-eight dol-
lars, and thereafter commenced this action to recover the
amount so paid from the defendants above named, L. Schoon-
over, W. N. Dearborn, H. F. Dearborn, George C. Lawrence,
and M. Champlin, claiming that they had agreed, in con-
sideration of receiving the surplus and undivided profits, to
pay the taxes assessed against the stock.   The agreement to
pay the taxes is denied by the defendants.   At the conclusion
of plaintiff's evidence all the defendants filed motions for a
directed verdict.   The motions were sustained as to all save
defendants Millard and the Anamosa National Bank.   It is
now insisted that it should have been sustained as to all the
defendants.   The grounds of the motion, in so far as the
bank was concerned, are that there is no evidence to show
that it was a party to the contract, or that Millard, or any
one else, had authority to bind it.   As to Millard the grounds

are:  First, "that it is a joint action, and that there is no evidence of joint liability, or of any liability, on his part;" and, second, if there is any liability on his part, it is an individual liability, and that an individual judgment cannot be rendered against him in this action, because brought against several defendants.  Defendants argue that there is no sufficient evidence of a contract to justify the submission of the case to a jury as to either defendant.  An examination of the record discloses sufficient evidence to justify the action of the trial court.  Plaintiff and others testify to such a state of facts and circumstances as would justify a jury in concluding that such a contract was made.

2     But it is said that Millard acted for a known and disclosed principal, and within the scope of his authority, and is, therefore, not individually liable.  There was evidence to the effect that Millard refused to disclose his principal when dealing with the plaintiff and those whom he represents.  The stock was assigned in blank, and delivered to Millard.  Under this state of the record it is clear that defendant Millard was personally liable on his promise.  True, there is evidence to the effect that he afterwards disclosed the name of his principal, but this was not sufficient to relieve him.  *Stevenson v. Polk,* 71 Iowa, 278.

Again, it is insisted that the bank is not liable—*First,* because Millard was not authorized to act for it; and, *second,* because it could not lawfully authorize such a contract, even if made; and, *third,* because the petition counts on an express contract, and there is no evidence to sustain any such averment.  As to the first point, the jury may have found such authority from ratification of Millard's acts in purchasing the stock.  Surely Millard was authorized to take the securities belonging to the bank, and exchange them for the stock owned by plaintiff and others.  Indeed, no complaint is made of his conduct in so doing.  In making the exchange, the jury may have found that he agreed to pay

the taxes in virtue of the bank's being allowed to retain the surplus and undivided profits. If such agreement was made, and partly performed, and defendant bank had the benefits arising therefrom, it must also assume the burdens of the contract. One who receives the beneficial results of a contract made in its behalf by another cannot deny the authority of the person making it. *Wardner, Bushnell & Glessner Co. v. Jack,* 82 Iowa, 435; *Eadie v. Ashbaugh,* 44 Iowa, 520. Ratification is equivalent to express authority, and may be proven under an allegation of express contract. *Long v. Osborn,* 91 Iowa, 160. There was nothing illegal or criminal in the bank's promise to pay the taxes in consideration of being allowed to retain unpaid dividends and surplus, although the taxes were not properly assessed to the bank. *Hershire v. Bank,* 35 Iowa, 272. Further, it is contended that recovery should have been against Millard as an agent acting for an undisclosed principal, or against the bank as principal, and not against both. A sufficient answer to this contention is that Millard acted not only in behalf of his bank, but also for himself, as he held a part of the stock obtained under the contract, and had the benefit thereof. Aside from this, however, the defendants do not plead election or estoppel, and it may well be doubted whether, without such plea, the question of the principal's liability, where the agent is also sought to be held, can be determined. In any event it is a case against an undisclosed principal, and there may be liability of both principal and agent in such cases. Mechem, Agency, section 695.

II. The court instructed the jury that, if they found plaintiff and his assignors "agreed to sell the said shares of stock, and take in payment therefor notes and mortgages of the Anamosa National Bank and the accrued interest thereon; and you further find that said Millard received the said shares of stock; and you further find that as a part of the consideration for the shares so purchased, and as a part.

of said agreement, said Millard agreed to pay the taxes levied and assessed against the said stock for the tax of 1896,—then you are warranted in finding a verdict in favor of the plaintiff." This instruction is said to be erroneous for the reason that there is no evidence that plaintiff was to have the accrued interest on the securities. This is true, and there is no claim in the petition that such was the case. The instruction, although erroneous, was not prejudicial to the defendants, and they cannot complain. It cast upon plaintiff more of a burden than he was required to assume, but he is the only one who may complain of it.

III. Plaintiff pleaded an express contract on the part of defendants to pay the taxes on the stock, and it is said that there is no evidence to support the allegation. We are satisfied there was such evidence. The court instructed the jury in this connection as follows: "(1) You are instructed that the statutes of this state provide that, 'when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it' (Code, section 4617), and this statute applies to verbal contracts as well as written, and in this case, in determining whether a contract was made relating to the taxes in controversy, you have the right to apply the provisions of this statute to the parties in this case." Claim is made that the statute quoted has no reference to express contracts. We have heretofore held to the contrary. See *Cobb v. McElrey,* 79 Iowa, 603; *Pierson v. Armstrong,* 1 Iowa, 282. There is no evidence of any express authority from the bank to Millard to purchase plaintiff's stock, but we think there was sufficient evidence of ratification to make the bank liable for the contract made by Millard, its cashier. This contract, as we have said, was for the benefit of both the bank and Millard, and there was evidence tending to show that the bank ratified it.

IV. As to the claim of misjoinder of parties and of causes of action, it is now settled that a misjoinder must be taken advantage of by motion. If the pleading is not so attacked, the objection is waived. *Flynn v. Railway Co.,* 63 Iowa, 490; *Miller v. Railway Co.,* 63 Iowa, 680. If plaintiff maintains his action against one of several defendants, he may have judgment against that one, and the other defendants may have judgment against plaintiff for costs. The rule is alike applicable to actions *ex contractu* and *ex delicto Boswell v. Gates,* 56 Iowa, 143; *Eyre v. Cook,* 9 Iowa, 185; and Code, sections 3465, 3547, 3548, 3773. *Barnes v. Ennenga,* 53 Iowa, 497, relied upon by defendants, was modified by this court in *Boswell v. Gates, supra.*

Some other matters are discussed by counsel, but they are either disposed of by what has been already said, or are not regarded as controlling. There is no prejudicial error in the record, and the judgment is AFFIRMED.

GRANGER, C. J., not sitting.